**UDALL│SHUMWAY**
COUNSELORS AT LAW SINCE 1965

1138 NORTH ALMA SCHOOL ROAD, SUITE 101
MESA, ARIZONA 85201
Telephone: 480.461.5300 | Fax: 480.833.9392

Bradley D. Gardner - #011211
bdg@udallshumway.com
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARIE A. MDAMU<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN TRAFFIC SOLUTIONS, INC., a Kansas corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff, Marie A. Mdamu, by her attorney undersigned, complaining of Defendant, alleges as follows:

## I.   INTRODUCTION

1.   This is a proceeding for compensatory relief (including liquidated damages), punitive relief, equitable relief, and attorneys' fees and costs from American Traffic Solutions Inc., (hereinafter "Defendant") for its discrimination of Marie A. Mdamu (hereinafter "Plaintiff") based on her disability.

II. **JURISDICTION**

2. This action arises out of the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, et. seq. ("ADA").

3. Jurisdiction over these claims is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a) (4), 42 U.S. C. § 12117(a), and 42 U.S.C. § 12203.

4. All prerequisites to suit have occurred. On May 3, 2012, Plaintiff filed charges for disability discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff then filed a retaliation charge with the EEOC on August 30, 2012. Plaintiff has received a notice of her Right to Sue on November 25, 2014, and Plaintiff has commenced suit within 90 days of receipt of said notice.

III. **VENUE**

5. This action properly lies in the District of Arizona pursuant to 29 U.S.C.A. §1391(b) because the claim arose in this judicial district.

IV. **PARTIES**

6. Plaintiff, Marie A. Mdamu, is a citizen of the United States and was at all times relevant hereto, a resident of the County of Maricopa, Arizona. Plaintiff currently resides in Georgia.

7. Upon information and belief, Defendant American Traffic Solutions, Inc., is a Kansas Corporation with a place of business at 1330 W. Southern Avenue, Tempe, AZ 85282. Defendant engages in an industry

2

effecting interstate commerce and employs more than fifteen (15) regular employees.

## V. FACTS

8. From approximately, January 2008 until June 30, 2008, Plaintiff worked as a temporary hire for Defendant. Plaintiff was then hired by the Defendant from approximately June 30, 2008, until the date of her discharge on August 29, 2012. Her last position with Defendant was that of a violations processor.

9. Plaintiff's work consisted primarily of data entry on a computer and her schedule consisted of four, 10-hour days per week.

10. At the onset of her work for Defendant, she was required to meet an hourly quota of entering around 70 citations per hour. By 2011, Defendant had increased the required quota to entering 110 citations per hour.

11. This rapid paced data entry required Plaintiff to use her hands on a keyboard toggle and a mouse continuously throughout her working hours.

12. Sometime in 2010, Plaintiff began experience wrist pain in both wrists. This pain increased in intensity when performing her data entry work.

13. In 2010, Plaintiff began seeing a private physician to determine if treatment would alleviate the pain. She was diagnosed with a right de Quevervain's extensor tenosynovitis and left wrist insertional tendinitis. This

eventually resulted in Plaintiffs need to wear braces on both wrists and receive therapy treatments.

14. The pain in her wrists substantially limited her ability to perform major life activities including manual tasks such as typing and working as a processor using her hands on a keyboard and mouse all day.

15. The pain persisted through approximately August of 2011 at which time she informed her supervisor, Scott Darnell, and her human resources representative, Karen Holihan, that her medical condition prevented her from meeting her data entry quota per hour and that she was requesting a reasonable accommodation.

16. Prior to the onset of her disability, Plaintiff had been satisfactorily performing her job and was one of the more senior processors with the company.

17. Plaintiff requested, per doctor's orders, that her hourly quota be reduced slightly as she was unable to meet the hourly quota due to her disability. Mr. Darnell refused to alter her quota.

18. Plaintiff requested, per doctor's orders, that she be given a break each hour to rest her hands. Although a break was provided, she was still required to meet the hourly quota of 110 citations per hour.

4

19. Additionally, Defendant placed the Plaintiff on a performance improvement plan ("PIP") that required her to reach the quota of entering 110 citations per hour.

20. After realizing that her supervisor, Scott Darnell, would not acknowledge or accommodate her disability, she reported his actions the department supervisor, Alicia Carrithers. While Ms. Carrithers thanked the Plaintiff for bringing this information to her attention, still nothing changed and Defendant provided no accommodations to Plaintiff.

21. Since the time Plaintiff reported her disability, she was constantly harassed by Mr. Darnell about meeting quotas despite her inability to do so based on her disability.

22. On several occasions, Mr. Darnell would stand over Plaintiff's shoulder and watch her as she performed her work. During one such instance, Mr. Darnell became frustrated with Plaintiff because of her inability to reach the hourly quotas and he told her that she needed to take responsibility and to "own it" when referring to her quota. Plaintiff explained that she could not due to her disability, but he refused to accept that reality.

23. On one occasion, after repeatedly demanding that Plaintiff reach her quotas despite her disability, Mr. Darnell brought another processor to sit and watch the Plaintiff to find out what the Plaintiff was doing wrong and why she was not hitting her quotas. Plaintiff was a senior processor and was aware of

5

her requirements. It is believed that that was an effort by Mr. Darnell to embarrass the Plaintiff.

24. On another occasion, Plaintiff applied for open positions within the company that did not require the strain on her wrists. These positions included training new processors, quality control, and mail room. Although qualified for these positions, she was denied by Ms. Carrithers because Plaintiff was on a PIP plan due to her disability and therefore could not be considered for the job. When looking for other positions within the company that were less demanding on her wrists, Plaintiff was told by human resources representative, Cara Sheedy, that there was nowhere else to place her.

25. On another occasion, Plaintiff went to an employer sponsored hour-long meeting and was told by Mr. Darnell that she would need to make up an hours-worth of work that day. She had her regular weekly doctor's appointment that day, which Mr. Darnell was aware of, and so she attended the appointment. She received a citation for this action.

26. After months of Defendant failing reasonably accommodate Plaintiff, Plaintiff filed a disability discrimination claim with the Equal Employment Opportunity Commission against the Defendant on May 3, 2012.

27. Sometime in May of 2012, Defendant provided Plaintiff with an accommodation requested by her doctor, restricting Plaintiff's work hours to

only 5 hours a day for four days a week. Plaintiff was also moved from Mr. Darnell's supervision and placed under Susan Yankee.

28. Unfortunately, the Defendant still did not reduce the required hourly quota which meant that the Defendant still could not meet the quota. This accommodation did not alleviate the problems caused by the repeated activity of data entry and the high hourly quota that were the source of Plaintiff's pain due to Plaintiff's disability.

29. On August 29, 2012, the Plaintiff again sent an email to her supervisor Susan Yankee, requesting reasonable accommodations.

30. That same day, August 29, 2012, Plaintiff went to an employees' training meeting. After the meeting, Plaintiff was pulled aside into an office and was told that she was fired. She was not allowed to return to her desk, but was handed a box of her belongings that had been gathered during the employee meeting and she was escorted off the premises in a humiliating fashion.

## VI.   CAUSE OF ACTION

### Count One

### (Disability Discrimination)

31. Plaintiff restates and reaffirms and incorporates all previous paragraphs of her Complaint as if stated herein.

32. The Americans With Disabilities Act and requires the Defendant to provide a reasonable accommodation to a person with a disability.

33. Plaintiff's wrist conditions substantially limited her ability to perform major life functions including performing manual tasks and work.

34. Plaintiff was qualified to perform her job, but she was unable to meet the high hourly quotas due to her disability.

35. Defendant was made aware of Plaintiff disability sometime in 2011 when Plaintiff informed her supervisor, Mr. Darnell, that she had a disability. Plaintiff also informed Alicia Carrithers, and her human resources representative. Additionally, individuals working for the defendant received correspondence from Plaintiff's doctor describing the disability and accommodations that would benefit the Plaintiff.

36. Despite Defendant's knowledge of Plaintiff's disability, the Defendant failed to provide a reasonable accommodation. The Defendant even excluded the Plaintiff from obtaining open positions in the company for which the plaintiff was qualified.

37. Plaintiff alleges that Defendant unlawfully and discriminatorily terminated plaintiff's employment on account of her disability or disabilities and that said actions violate the provisions of the Americans With Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq.

## Count Two

### (Retaliation)

38. Plaintiff restates and reaffirms and incorporates all previous paragraphs of her Complaint as if stated herein.

39. Plaintiff filed a claim with the EEOC for disability discrimination on May 3, 2012.

40. On August 29, 2012, Plaintiff was fired from her job.

41. Plaintiff promptly filed a charge for retaliation on August 30, 2012.

42. Pursuant to 42 U.S.C. § 12203, Defendant unlawfully retaliated against Plaintiff for her filing an EEOC charge alleging that Defendant violated the Americans With Disability Act.

## VII. PRAYER FOR RELIEF

Wherefore, Plaintiff Marie A. Mdamu prays for judgment against defendant as follows:

A. For a money judgment representing compensatory damages, including lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amount, in addition to tort damages;

B. For a money judgment representing punitive damages for Defendant's wilful violations of the law;

C. For a money judgment representing interest, if applicable;

9

D. For lost monies and out of pocket expenses, especially related to, but not limited to, damages for being forced to sell real or personal properties;

E. For costs of suit, including an award of reasonable attorney's fees, expert fees; and

F. For such other and further relief as may be just and proper.

## VIII. **JURY DEMAND**

Plaintiff demands a trial by jury on all claims that made by tried by a jury.

Dated this 20th day of February, 2015.

        UDALL SHUMWAY, P.L.C.

        By: */s/ Bradley D. Gardner*
           Bradley D. Gardner (SBN: 11211)
           1138 North Alma School Road 101
           Mesa, Arizona 85201
           Phone: (480) 461-5300
           *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2015, I electronically transmitted the above pleading to the Clerk's Office using the CM/ECF filing system and transmittal of a Notice of Electronic Filing to all parties that have entered an appearance in this matter as follows:

By: */s/ Sherry L. Mount*

4251148.1